Your Honor, it's the third case of the morning, 2-9, 6-8-5. We have the State of Illinois v. John B. Bruni. On behalf of the Echelon, Mr. Donald Ramsell. On behalf of the Academy, Mr. Scott Jacobs. Judge O'Malley senses regrets. He had some knee surgery and can't appear today. So we're going to miss his wit, wisdom, and intelligence. But he will hear the tape. He will be a part of the final decision. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Don Ramsell. I represent the Echelon John Bruni. The central issue in this case is whether the defendant's detention at a roadblock was unreasonably prolonged. Because the facts of the case have a great deal to do with the issues, I may recite them in detail. Essentially, this was a roadblock case. And I start by describing that because we start this case with a suspicionless seizure. Mr. Rezond, as a threshold matter, are you challenging the propriety of the roadblock stop itself? No. I struggle with that because there may be some issues that come, questions that may arise, particularly with the thought of the questioning, which the direction to the officer at the roadblock was to ask for a driver's license, insurance card, a quick equipment survey, a quick check for conviction violations, whatever that may be. And then the officer suggested that he was informed by a sergeant to engage the defendant in general questioning and see what comes up. For the purpose of this appeal, you're not challenging the constitutionality of the roadblock. Absolutely not. It's a matter of time. Yes, essentially it's a length of time. It's not a scope issue or anything of that nature. Now, what we have here, though, is fact-driven to some degree because in this roadblock, the defendant follows all of the directions that presumably were given to him in terms of drive here, park here, stop here. In fact, the officer who testified suggested that there was nothing about the defendant's driving, which he saw, at least in the lane, that was impaired. And because it's a roadblock, we start with a suspicionless seizure, which makes this, if you will, sui generis, to the extent that unlike every other stop where it starts with some bad driving or some illegal conduct, we have zero illegal conduct and from there proceed. So if we were looking for the bucket of facts for reasonable suspicion, we start with zero. And we see nothing in the driving that lends itself towards some justification for a detention beyond what the roadblock itself allows for. Here, the defendant approaches, stops, is requested to provide an insurance card and his driver's license, and through that mannerism, if you will, we see unimpaired fine lower skills, unimpaired speech, unimpaired delivery of these objects, no apparent confusion. Now, when we talk about totality of circumstances, which is certainly a phrase that's frequently employed in Fourth Amendment cases, we don't just concentrate on everything bad. We, again, use the bucket of facts, if you will, all of what I'm suggesting. So facts that establish positively a lack of impairment can't be ignored when we hear something like faint odor or glossy eyes. Those are two things I could probably list 20 that happen that were proof of non-impairment. Those are all in that totality of circumstances. So if the argument hones down into faint and glossy, that's not the vacuum we concentrate on under jurisprudence for the Fourth Amendment. We look at the totality of circumstances. So here, the officer's given the information and paperwork that the roadblock authorized him to receive. And at that point in time, according to the facts in the case, there is not even the faint odor of alcohol observed. The officer told us at that point he had seen what he was facially satisfied with, and then in the sequence of events at that point engaged the defendant in further conversation based on the encouragement of the sergeant who had instructed him to continue to converse with the defendant. Now, I'm not saying this roadblock was illegal. But if you look at the facts of the case, at that point, what allowed the officer to continue to detain the defendant? Mr. Eisen, let me ask you this. Is there anything in the record to suggest that the officer in question engaged in any conduct that was not reasonably related to the objective of either confirming or dispelling a suspicion that the defendant might be impaired? Did he do anything improper other than talking to him at that point? We asked him where he was coming from and where he was going. These things, from my standpoint, are unrelated to the roadblock itself. Who cares where somebody was coming from or going to? The officer himself indicates that the purpose of his conversation was also to ferret out the possibility of more crime. It was investigatory even in his own admission. At that point, it was a conversation. It was a conversation, and sadly, there is some case law that suggests mere questioning is not a seizure in and of itself. However, there is equal case law that says continuing to detain a person while engaging them in conversation can unreasonably prolong the seizure. Certainly, the question should be before the court. We raised it in our briefs. And in the sequence of events, it was during that conversation, whatever was said. Let's say they were talking about a sports team. It was then that a faint odor of alcohol came from the passenger compartment. I would also point out, fact-wise, the officer said it came from the passenger's compartment, not that it came from the defendant's body or mouth. We do not know that. During that conversation, nothing else other than this unarticulated, glossy eyes. And I'd submit to the question before the court should be, where is there a connection somewhere in the world that wet eyes has anything to do with intoxication or impairment? What about if you testified they were glassy eyes? Wouldn't that be – isn't that commonly an inference that an officer draws? They testify all the time. If the defendant had glassy eyes, isn't that testified to as evidence of possible impairment? You know, I hear those – if you will, I call them devil words because they're easily said and most difficult to disprove. My eyes are glassy. Everybody's eyes are wet. I assume they must be glassy. That's why you get glass eyes. I don't really know what that means, honestly, other than it's easily said and difficult to articulate, and we're talking about specific and articulable. I don't think if you saw glassy eyes that from that alone one would even be free to leap to the logic that there's a reasonable suspicion they must be intoxicated, as much as one might argue that the smell of McDonald's french fries means there's a reasonable suspicion that person's obese. What should a reasonable police officer do if he smells an odor coming from within the car, whether it's the passenger side or the driver side? Well, in this case, he engaged in conversation. He had ample opportunity to ferret out indicia of intoxication, and that's the deal here. This wasn't just a critical split-second determination, which, if it had been, would perhaps be different, but the state in their own brief suggests the several minutes that he was there conversing with him was ample opportunity to ferret out whether this glassy eye means impairment or this glossy eye doesn't. Well, how does he do that without then taking it one step at a time? And I understand your argument. You're making the argument you should be making. You talked about totality, but now you're breaking these things down. You're saying an odor of alcohol in and of itself doesn't establish intoxication. Glossy or glassy eyes does not establish intoxication. The defendant at some point, as I recall from the record, admitted he had been drinking, correct? He had one drink. He admitted that. Yes. So we get that. So these are all factors in totality that a reasonable officer would obviously be entitled to take into consideration. Sure. Would he or she not? I agree. But what we have here is when it comes to DUI cases, we have a scale, if you will, a chart, a timeline, a weight line. There is lawful consumption of alcohol, and then operating a motor vehicle there is unlawful. There's a plethora of cases we've cited in and out of the state that mere consumption of alcohol is not illegal, nor should it suggest that it's authority to force someone to submit to field sobriety tests reminding the court it's a suspicionless seizure. Actually, there's cases in the 2nd District that have held that consumption of alcohol, drinking after consumption or driving after consumption of alcohol is not inherently criminal. And I think we can all accept that particular argument for purposes of this case. However, you've got a stop. We're not challenging the legal propriety of the stop. During the course of the conversation, if you will, the officer detects an odor of alcohol, says the defendant has glossed the eyes, and he admits he has been drinking. At that point, are we giving rise to a particularized individual suspicion of possible impairment? And what are you suggesting the standard should be? Because obviously, as a public policy concern, if somebody should then drive off and have a fatal accident, what is an officer supposed to do when he's confronted with these potential signs of impairment? Well, I would suggest that the line in the sand that this Court has to draw should be to find actual indicia of impairment. Our definition of impairment here is that the person has consumed any amount of alcohol that reduces their ability to think or act with ordinary care. I see no reduction of this person's thinking or acting with ordinary care before this officer. What we have, frankly, right in front of him is mere consumption of alcohol and an unarticulated statement of glassy but not red or bloodshot eyes. That's the definition. Now, frankly, in order to avoid the potential for a police state, and I mean that in very respectful terms, but where is this different than a roadblock surrounding a church that serves wine? Because those people will have the same wet eyes and the same smell of alcohol. Well, let me ask you this. What would be the standard? Would you agree if the officer has, at that point, a reasonable, articulable suspicion of impairment, wouldn't he be able to justify the minimal intrusion of asking the motorist to step out of the vehicle to perform a field sobriety test? Yes. Is that accurate? Yes. So then it depends upon our assessment of the quantum of evidence that is established by the facts of this case to reach that reasonable, articulable suspicion, correct? That is correct. And you're saying it doesn't exist based on those factors. No, and frequently, 99.99% of the cases that would come before this court would involve an impaired driving maneuver of some degree before the stop occurred, something to establish a loss of control over the vehicle, improper language, speeding, accident, you name it. This is a suspicionless seizure, and even under Michigan v. Sitz where we started in this plethora of cases, the court there said something more would be required before you could remove the motorist from his vehicle. He and in Sitz, it was a 25-second exposure to the officer, enough for the facially valid license, insurance and equipment, et cetera. This person is being taken out of the car for mere consumption. There seems to be no doubt, at least in this attorney's mind, that nothing more was happening. And let's not forget the real-world analysis that even the Illinois Supreme Court has suggested we should employ in all cases involving reasonableness, which is it was a roadblock where there was a desire to, if you will, find DUIs. If you start out with that, you kind of lean it in one direction or another. It would be foolish not to have that in the back of our minds. Is that constitutionally impermissible to have a roadblock and look for not only somebody driving with a license and insurance, but to be aware of possible impaired drivers? Is that something constitutionally permissible? No, it wouldn't be. It's perhaps pretextual, but not illegal. And I simply would not wish to consider that a vacant factor. Do you think a Terry stop has any role in this case? Pardon? A Terry stop. The state-tendered case of People v. Clothes, a recent Supreme Court case that primarily analyzes a Terry stop, I think gets to the point where you need very few facts to obtain a Terry stop, justify a Terry stop. Do you want to indicate whether or not you feel your facts have any connection with People v. Clothes? I think that's easily distinguishable. That's a very distinguishable case. Someone's computer, a police officer was told, that person has a revoked driver's license. That person is committing a crime. And the appellate court had suggested that the officer had to determine whether he was potentially innocent because he had an RDP or potentially guilty before he could stop that car. That's wholly different. To analogize to this case would be if the police officer received a computer dispatch that this person is under the influence, that would be People v. Clothes. Notice of the crime right in front of you. This is not that case. Well, what really happened here, the basis of the objection is the motorist was asked to alight from the car. We have an odor valve at home. Definitely. We have the officer testifying he had glassy, glossy eyes. And then we have the officer testifying the defendant admitted drinking. All of those factors wouldn't justify somebody stepping out of the car and doing a quick field sobriety test? No. And you'd have to be able to separate and articulate when is that an innocent conduct and when is it not. I mean, there has to be some line, something called speculation or conjecture or hunch. And this is that case. Well, if they asked every motorist or robot to step out of the car and do a field sobriety test, I think your point would be very well taken. But we still have some factors here that would be indicia of possible impairment. And I suppose it's in the eyes of the beholder. But this isn't simply an arbitrary, I want everybody to get out of their car instead of doing a field sobriety test. I think you have a little more than that here. No, see, all drinkers is what I think it is. All drinkers must get out of the car and do a field test. Thank you. Why don't you start by answering his last question. It poses a very true rhetorical question. Yes, Your Honor. There's a veiled roadblock. An officer smells some alcohol. Has everybody who obviously has been drinking to any extent, is it permissible constitutionally to order them out of the car to do a field sobriety test? To order them out of the car? Yeah. I question whether or not it would be necessary to order them out of the car. How did the defendant get out of the car? Wasn't he directed to get out of the car? No, actually. In this case, the officer asked the defendant to get out of the car, and the defendant volunteered. The defendant voluntarily got out of the car. The officer asked him, would you mind stepping out of the car to take a field sobriety test? That can be found on pages 15 and 16 of the record. And the defendant voluntarily complied. He moved into a lane, took the field sobriety test, failed every single one of them. So your argument is that there's no constitutional implications of this because the defendant volunteered? No, no. It's not that there's no constitutional implications of this. And I wouldn't say that for those purposes the defendant was under arrest at that point. I would say that the officer at this point, you know, at what point we move from a Terry Stopp reasonable articulable suspicion to probable cause to arrest, is always a very troublesome question. Where in this case that occurred, I'm not even sure that I can answer that question for you. But I know that it didn't occur where Mr. Ramsell thinks it occurred. I know it occurred certainly after the point where the defendant voluntarily took field sobriety tests. And I think this is the point in which maybe this is really the crux of the case. I mean, the officer is confronted with set facts in front of him. He's confronted with an individual who pulls up. There's no problem with his license, his registration, or any of that. But the officer smells the faint odor of alcohol emanating from the car. And what Mr. Ramsell's brief takes into position is that the officer shouldn't have been engaging in any conversation with the driver of the vehicle unless he saw an equipment problem with the vehicle or detected, I guess, an overpowering smell of alcohol from the car. I don't know that that's accurate, but let me ask you this. Are you suggesting that an officer at a roadblock can ask even a motorist to step out of the car and do field sobriety tests without a reasonable articulable suspicion of possible impairment? No, no, that's not at all my position, Your Honor. No, there must be a reasonable articulable suspicion. In this case, and the reason that I asked this court for leave to cite to people to be closed is because our Supreme Court laid it out once again very clearly. It's that under the totality of circumstances, the officer must be able to point to reasonable articulable facts that would suggest that there's some crime that has occurred or is about to occur. In this case specifically, to cut to the crux of the matter, what are the factors? Before the officer, the motorist, was asked to alight from the car and perform field sobriety tests, what is the evidence that gave rise to an individual with particularized articulable suspicion of possible impairment? The first piece of evidence that Officer Vergara testified to that he saw was the faint odor of alcohol that he observed. That can be found on page 13 of the record. It would be revisionist history to say that there was anything other than that, that the first thing that Officer Vergara noticed was the glossy eyes. That's what Officer Vergara noticed after he had already asked the defendant to move into a particular lane where I guess the Lyle Police Department was conducting field sobriety tests, over in a separate area off of the area where they were conducting checkpoints on I believe it was Ogden Avenue, which makes sense that they wouldn't want to conduct field sobriety tests right in the main area of the road where they're possibly detaining drivers for a period of time. But the point is that the defendant voluntarily did these things. He voluntarily said, yeah, sure, I'll take a field sobriety test. And through the course of this conversation, after the officer smelled the faint odor of alcohol, this is when the officer and the defendant get into the conversation about where the defendant was coming from. I don't believe he ever mentions it specifically, but he says, yeah, I came from a karaoke party. And not only did I go to me before he's asked to step out of the car. Yes. This is, I believe, while the defendant is still in the driver's seat of the car before he moved over into the area where they were conducting field sobriety tests. So he acknowledges he's been drinking? Yes. He says I had, I believe his exact statement is that I had one beer. The point that my opponent makes in his brief is that the admission that the defendant had one drink, he makes two points based on this. He says one drink is not enough for reasonable articulable suspicion and that one drink is not enough to order him to do field sobriety tests. Would it be? If some officer says I had one drink and there's no other observations, is that sufficient to order somebody out of the car? With no other observations? I would admit that that would be very questionable. I would agree. But taken together with the faint odor of alcohol, that, the possibility that the driver might be impaired, I think that, along with the other officer's observations, I think he's warranted and certainly asking the driver to take field sobriety tests. The other observation is the glossy or glassy eyes? Yes, which he makes after they have, after the officer engages the defendant in this conversation. Still while the defendant's in the driver's seat of the car prior to taking the field sobriety tests. Would the mere odor of alcohol emanating from the car give the officer reasonable suspicion to believe there may be open alcohol inside the car? Reasonably, to believe there might be open alcohol inside the car. Reasonably, yes, Your Honor. I believe so. Certainly. And if he had a reasonable belief that there might be open alcohol, he certainly could ask the defendant to step out so he could look in the car and move the car over so he could. I believe that would be the law, Your Honor. Yes. So under those circumstances, the mere odor of alcohol justifies the Terry stop with respect to a reasonable belief of there's alcohol someplace and I'm going to look for it. Yes, Your Honor. That would be my position. I mean, as long as driving under the influence is still a crime, it is suggestive of the fact that the defendant is too impaired to be driven. In any event, in this case, you have more than that. You have the odor of alcohol and you have the glossy eyes. That is correct. And you have the admission of drinking. That is correct. Are you aware of a Massachusetts Supreme Court case that held the mere odor of alcohol gives rise to a reasonable suspicion warranting further detention of a motorist after the checkpoint? I am after you just said that to me, Your Honor. I couldn't tell you the name of the case, though, no. It's Commonwealth v. Bazinet, 76, Massachusetts Appellate Court, 908. However, there are cases in other jurisdictions that go the opposite way. I will simply tell you that to be totally candid and honest with you. Of course, Your Honor. I think, again, you know, this all points to, you know, counsel said that this case is sui generis. And, really, the truth of the matter is that all Terry stop community caretaker functions and probable cause cases are sui generis. Is this a case of first repression in Illinois? Again, I think all— In a more black context? I think all Terry stop cases are cases, I mean, if we were to take it with the most literal definition, they are cases technically of first repression. They each present a unique set of facts, a unique set of testimony by the officer, and they require us to make individual determinations about what was subjectively reasonable under those circumstances. Did you find any cases that are on all fours with this? Let's not get confused. I think there's a tendency, given the fact that this proceeds from a roadblock, to get confused. Let's assume that the defendant was stopped in the middle of a roadway, or there was some other reason for the officer to approach the car. Sure. Forget about the roadblock for a second. You have these factors, the glossy eyes, the odor of alcohol, the omission of drinking. Do you have cases that say that would be enough to order motors out of the car? Absolutely. You do? Yes. Okay. Can you point those, bring those to our attention? I believe they are highlighted within the people's brief, which I regrettably do not have in front of me. Can you summarize those factors? Essentially, I mean, cases of that nature are buried in Illinois law. And if you'd like, I'd be more than happy to prepare something additionally for the court specifically pointing to those particular cases and the facts of those cases. There are cases that if the odor of alcohol, plus the omission of consumption of alcohol, those two elements are enough. Of course. For a probable cause. Absolutely. I think in this case, though, I think what the real back and forth argument between the state and the defendant is here, it really centers on the question of, and this is certainly what the defense devoted most of their brief to, is, well, he said he only had one drink. He only had one beer. And with everything that goes on in a Terry context, I really can't think of a more ambiguous phrase than one beer. I mean, are we talking about a 40-ounce beer? Are we talking about one of those little beers that they hand out at Cinco de Mayo? Are we talking about a Oktoberfest beer stein that looks like a shoe? What's that new beer that's getting a lot of attention? The one where they mix too much liquor? Yeah. I think it's called Four Loco. I can't speak to the taste. Wouldn't one of those be enough? It's called Blackout the Can, as far as I know. I have to confess that I'm. . . You're not up on that? You don't want to make any judicial omissions, now, do you? Be careful. Yeah. You're one of my bosses in the gallery, so you're really not doing me any favors here. Anyway, long story short, though, I really think that just the admission that somebody has been drinking. . . Quantity-wise, I don't think. . . The defense makes the argument that, well, the officer should have put on record whether or not he believed the defendant. No one will on a case. No case anywhere has ever held that the officer is required to put on the record whether or not he believes what a suspect is telling him. I mean, what if the suspect had said to him. . . It's a reasonable officer, not the particular officer's belief, anyway, so. . . That's true, Your Honor. Well, let me ask you this. Sure. Anything you'd like, Justice Hudson. If we were to uphold the arrest in this case, would we be announcing, as Mr. Ramsell was arguing, that anyone, all drinkers have to get out of the car at sobriety checkpoints? Absolutely not, Your Honor. And why would that be? Because the principles of fourth amendment analysis in general dictate that each case is based on the facts of those cases. And they have to be analyzed under the totality of circumstances of that case. This Court wouldn't be announcing any new rule, just as the Supreme Court didn't in People v. Close. All it's doing is appraising the facts of that case, making a judgment, and we move on from there. I don't think our Supreme Court could have been any clearer. I don't think Justice Burke's dissent from that case could have been any clearer about what exactly her problems were with the analysis in that case and how she would have analyzed it differently. But the point is that in every one of these cases, all we're doing is making factual situations a matter of, you know, judicial opinion. And then we spend, of course, those of us that are appellate attorneys and appellate judges make in some cases a lot of money and in some cases not so much money, arguing about whether or not subsequent factual situations are analysis. But that's it. It's not a broad rule. It's not a bright-line rule at all. It's simply about whether or not these facts fit into this context, and that's it. It doesn't go further than that. It doesn't demand that every driver who's ever had a drink ever must step out of the car immediately. It just doesn't look like that. It never has. So in that sense, Your Honor, I don't think defense counsel's suggestion is correct. I think the facts in this case certainly lead to reasonable, articulable suspicion by a reasonably objective police officer, whether it was the officer in this case or any other officer. I think he had more than enough to ask the defendant to take field sobriety tests, and we all know how that ended up. As a result, I don't see any reason here why this court should overturn the findings of the circuit court. And as the circuit court stated, or I'm sorry, as was stated in front of the circuit court, when a reasonable police officer is confronted with facts such as these, he would literally be, he or she, would be in dereliction of duty to look otherwise, to let the driver go on his way, endangering citizens in the state of Illinois, when possibly an intoxicated motorist remains on the road. So for those reasons, I believe the judgment of the circuit court was correct. And for the reasons stated in the people's brief, I ask this court to affirm the judgment of the circuit court. What would your position be if, after serving the driver, knowing that he had one beer, that there was an odor of alcohol emanating from the car, and that his eyes were glossy, and said, pull over and I'll get to you in 15 minutes for a sobriety test? I think that would be an unreasonable detention. Would that be unreasonable? I guess if it was presented in the circumstances where the defendant had no other choice. I think if it were, you must pull over and wait for 15 minutes. I mean, from a prosecutor's perspective, I think that would make for a not so great DUI case. Well, let's assume that it would be a violation of his right to... I believe that is what you're asking for. Let's narrow it down to five minutes. I think five minutes is the case we have here. Where do we draw the line? Well, I'm not necessarily sure that five minutes is the case that we have here. I mean, the context that it was presented was... What is the time? The time frame that we have here, I think, was in which Officer Provera ascertains that the defendant has a faint odor of alcohol emanating from him, observes the glossy eyes, and notices the smell of the faint odor of alcohol emanating from the passenger cabin. Those three facts were ascertained right at the moment where they're having a conversation prior to asking the defendant to move over to the side and take the field sobriety test. So how long a conversation like that takes? I think reasonably between us, less than a minute. He's got his license and registration right there, his insurance information right there. I don't think we're talking a five-minute conversation in that case. Moving him off to the side, waiting a while, getting in line, asking him to take field sobriety tests, which the defendant, again, voluntarily consented to. I believe Officer Provera testified that that took approximately five minutes. So that's a seizure in a sense, but it's a horse of a different color because the defendant voluntarily took those field sobriety tests. I think if you look at all the cases, though, it's pretty clear. The cases do not contain a specific definitive time frame. It's clear the Supreme Court of Illinois and the United States Supreme Court want these things, the citizens, not to be detained and necessarily belong to detention. But it's viewed in terms of the duration of it. But we have to keep in mind there's a difference. They don't place arbitrary limits at all on how long the motorist can be detained when the initial officer's observations warrant a further investigation. So you've got to break it down in the first part of it and then what happens after that. In his example, keeping somebody waiting around 15 or 20 minutes without any specific individual or typical suspicion I think could be problematic. I agree with you there, Your Honor. I think it's analogous to situations where, as this Court stated often, we often refuse to apply hard and fast rules when probable cause information might become stale. I mean, we know, obviously, that six months might be too long. But six weeks, given the facts of the case, I mean, that's why these things are sui generis. That's why we don't create broad rules based on limited factual circumstances. So with all due respect, I don't believe this case would end up standing for the proposition that my opponent thinks that it could. For those reasons, I would ask this Court to affirm the judgment in this court. Thank you. Well, one point that I would like to chronologically emphasize is that according to the testimony, the faint odor and the glossy eyes occurred during the extended conversation after the valid license and insurance card had already been produced. And in our brief, the defendant was, quote, unquote, good to go and should have been free to go. It was during the ferreting out of this extended conversation that both of those factors unfolded. I'd ask Your Honor to take a look at C-12 through C-15 and specifically C-71 for the timing of those events. So as it unfolded, C-11 pulls into the lane, no problem. C-12 produces driver's license and insurance, no problem. C-12, equipment, okay. C-12 and 13 then kept talking to driver, asking where the defendant came from, smells faint odor from passenger compartment, and says, and C-15, later in talking, saw a glossy eye. This part is an extension of the original justified detention. That if the court felt that would be an appropriate point in time to say that extended conversation was unjustified and not a part of the roadblock because everything else that was intended to be completed had so been completed. Faint odor, I understand the court says odor of alcohol admission to drinking, but the record is faint odor, admission to drinking one beer. By the way, four loco is a 23.5 ounce can of a combination of alcohol and energy drink, which equates to five or six beers. Just Your Honor's way. He's right over there. Oh, okay. I'm working on a franchise at this moment, Judge. Faint, dim, low, light, soft, lacking in distinction, dull, distant, delicate, vague, unclear. These are the synonyms for faint. If he had said odor of alcohol, Justice Hudson would be correct, but he said faint. He diminuted the odor to faint. Had the defendant said admission to drinking? Okay, different scenario. He said admission to drinking to one. Is his politeness and cooperativeness now the Hobson's choice? A denial of drinking is a different story. Suspicion of lying, I would submit. Had the officer wished to specifically and articulably state, given a very full record developed here, that I didn't believe him, that would be a fact in the bucket of reasonable suspicion that the court could rely on because he has that experience, expertise, et cetera. I agree it's not a time element, although I do submit that time does become its own factor. But it's the movement from the completion of the original basis for the detention having been completed, whether it took an hour or 52 seconds or whatever, that had been completed before even the faint odor or glossy eye was ferreted out from the extended conversation. It is reasonable for the court to say that exceeded the stop. That was an unreasonably prolonged detention. And we don't even have to deal with whether all drinkers would have to be, would submit to a field sobriety test. Although I would suggest if the court includes faint and glossy, we cannot forget those few minutes, as we argued in our brief, were minutes where the defendant is belying the officer's guess or hunch of intoxication. Those extra few minutes are driving down the reasonable suspicion because if a conversation is taking place, why are we not hearing something like the defendant's answers were confused, he wasn't making any sense. I asked him where he was coming from, he said purple cow. He looked away from me, he refused to look in my eyes. He tried to cover himself up. Apparently there was a very clear and intelligent conversation taking place as one would draw that reasonable inference from the facts, which reduces that thought that he's impaired. These are exhibitions of sobriety that can't be disregarded in the face of a faint odor and glossy eye. Your position is that there is no justification for Terry's stop because there has to be some justification to get him out of the car. We have an extended conversation, which I submit was beyond the scope or the basis for the stop or the detention. I don't want to use scope. And equally true, even during that conversation, faint and glossy does not equal justification for removal from the car. That's my second moment in time that I asked the court to concentrate on. Thank you so much. The case is taken under advisement. The court stands in review.